UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SCOTT EDWARD SIPPOLA,

    Petitioner,

v.

Case No. 2:12-cv-421
(Criminal Case No. 2:10-cr-21)
Judge Edgar

UNITED STATES OF AMERICA,

    Respondent.
_____

ALLISON LENORE COSS,

    Petitioner,

v.

Case No. 2:12-cv-430
(Criminal Case No. 2:10-cr-21)
Judge Edgar

UNITED STATES OF AMERICA,

    Respondent.
_____/

## MEMORANDUM

Scott Edward Sippola ("Sippola") and Allison Lenore Coss ("Coss") (hereinafter sometimes referred to as "petitioners") were convicted by a jury in this Court of Conspiracy to Extort Money by Use of Interstate Communications, 18 U.S.C. §§ 371 and 875(d); Transmission of Interstate Communication of Threat to Injure the Reputation of Another with Intent to Extort Money, 18 U.S.C. §§ 875(d) and 18:2(a) (2 counts). During the course of the trial, it was revealed that they had jointly attempted to extort $680,000 from actor John Stamos, claiming to have some compromising photographs which they threatened to sell to tabloids. They each received a forty-eight

month sentence with one year of supervised release. Their convictions and sentences were upheld on appeal. *United States v. Coss and Sippola*, 677 F.3d 278 (6th Cir. 2012).

Petitioners have each filed petitions for post-conviction relief under 28 U.S.C. § 2255, making various claims that they were deprived of their right to effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. This Court has previously rejected all of these claims save their claims that they did not receive proper legal advice from their respective attorneys causing them to reject plea agreements offered by the government. These plea agreements, petitioners claim, would have resulted in sentences less severe than the sentences they received after their trial. On October 24, 2013, this Court held an evidentiary hearing on petitioners' claim.

The framework for evaluating ineffective assistance of counsel claims is established by *Strickland v Washington*, 466 U.S. 668 (1984). *Strickland* establishes a two part test for deciding claims of ineffective assistance of counsel. First, the petitioners are required to demonstrate that the attorneys' performance was deficient. *Strickland*, 466 U.S. at 687. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed a criminal defendant under the Sixth Amendment. Second, petitioners must demonstrate that their attorney's unconstitutionally deficient performance caused them to suffer actual prejudice. *Id*.

Application of *Strickland* Test

The first part of the *Strickland* test requires petitioners to show that their attorney's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. This Court's scrutiny of defense counsel's performance is highly deferential. Counsel is "strongly presumed to have rendered adequate legal assistance, and [to have] made all decisions in the exercise of reasonable professional judgment." *Burt* v *Titlow*, -- S. Ct. --, No. 12-414, 2013 WL 5904117, at *6 (Nov. 5, 2013), *quoting Strickland*, 466 U.S. at 689-90; *see also Nix v Whiteside*, 475 U.S. 157, 165 (1986); *Docherty* v *United States*, 2013 WL 4564317, at *3 (6th Cir. Aug. 28, 2013); *Huff* v *United States*, -- F.3d --,2013 WL 5911236, at *5 (6th Cir. Nov. 5, 2013); *Nichols* v *United States*, 563 F.3d 240, 249 (6th Cir. 2009). The Sixth Amendment right to effective assistance of counsel does extend to the plea bargaining process. *Lafler v Cooper*, 132 S. Ct. 1376, 1384 (2012). Petitioners bear a "heavy burden" in showing their attorneys' deficient performance under the first part of the *Strickland* test. *Whiting v Burt*, 395 F.3d 602, 617 (6th Cir. 2005).

Counsel in a criminal case have an obligation to be familiar with the case; explain to the defendant what the government must prove to secure a conviction; discuss the evidence; and explain available options and sentencing exposure. *Titlow* v *Burt*, 680 F.3d 577, 587 (6th Cir. 2012), rev'd on other grounds, *Burt* v *Titlow*, -- S. Ct. --, 2013 WL 5904117 (Nov. 5, 2013); *Smith v United States*, 348 F.3d 545, 553 (6th Cir. 2003).

To satisfy the second part of the *Strickland* test, a petitioner must show that he/she was prejudiced by counsel's deficient performance. Specifically, petitioner

> . . . must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the Court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the Court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S. Ct. at 1385.

SCOTT SIPPOLA

Sippola's attorney was Sarah Henderson. She was retained by Sippola soon after his arrest. Sippola concedes that he discussed the facts of the case with Henderson. Henderson reviewed all of the discovery provided by the government, and used private investigators to gather information and locate witnesses. She talked frequently with Sippola either in person (Sippola operated a bar across the street from her office) or on the phone. Sippola was only offered one plea agreement. That proposed agreement came with a cover letter to Ms. Henderson dated March 15, 2010. Henderson showed the letter and proposed plea agreement to Sippola. The March 15 proposed plea agreement called for a plea to 18 U.S.C. § 875(d) with a statutory maximum sentence of two years. The elements of the offense were set forth in the plea agreement, which also set forth the factual basis of guilt. Although Henderson did not orally review the elements of the offense one by one, she did discuss with Sippola generally what the government would have to prove to establish guilt.

Sippola, who owned and ran a bar, was adamant that he would not plead to a two year felony, which he perceived would have prevented him from engaging in his

4

occupation. When Henderson advised Sippola that a plea here would probably require him to do time, he was doubly adamant that he would not plead. The March 15th cover letter, which Sippola reviewed with Henderson, clearly set out the applicable sentencing guidelines. Henderson advised Sippola that the guidelines were accurately stated in the letter. The letter also observed that Sippola could be charged with offenses carrying a 5 year maximum sentence. As it turned out, this is what eventually happened.

Sippola now says that Henderson advised him to reject the proposed plea agreement, and told him that based on the facts, he (Sippola) had not committed a crime; that what he had done was morally, but not criminally, wrong. The Court does not find this to be credible. Henderson, an experienced and capable attorney, denies making such a statement, and in the Court's view, would never have told Sippola that he had not committed a crime. Moreover, Sippola's veracity, just based on his undisputed actions that led up to this case, is suspect. In fact, both Henderson and Sippola concur that Henderson told Sippola that he would perhaps have a 50-50 chance of acquittal if the case went to trial.

On April 15, 2010, the government sent another letter, which basically just reiterated the March 15th plea offer. Henderson advised Sippola that the government's letter did not change the original offer. Sippola wrote to Henderson the following note:

> "Dear Sarah,
>
> I am ready to fight and do whatever it takes to win this case. I feel very confident having you represent me and I am very happy with the progress we have made so far. Thanks for everything, let's win this.
>         Scott Sippola"

5

Clearly Sippola wanted to "fight" this case, whether or not he thought that he was innocent. Even in the unlikely event that Henderson told him he was innocent, he would nevertheless have wanted to go to trial.

Sippola now faults Henderson for not discussing with him *United States v Jackson*, 180 F.3d 55 (2d Cir. 1999), *reh'g granted*, 196 F.3d 383 (2d Cir. 1999). He claims that when he read this case in prison, he had an epiphany that indeed under the law, he could be found guilty of extortion. Henderson did discuss the applicable law with Sippola. The Court is unaware that effective assistance of counsel requires discussion of specific cases with criminal defendants. In any event, Sippola was aware of *Jackson* because he was present in Court for a lengthy pretrial hearing during which the *Jackson* case was discussed extensively by Henderson and by this Court. In any event, the holding in *Jackson*, a Second Circuit case, was not the law in the Sixth Circuit until this case reached the Court of Appeals. *See United States* v *Coss and Sippola*, 677 F.3d at 284.

In sum, Sippola was well informed about his criminal exposure and about the risk he would take by going to trial. He consistently maintained his innocence. The choice to take his case to trial was his, and was not the result of inadequate legal representation. Sippola has not carried his heavy burden of showing the first part of the *Strickland* test. Henderson's legal services in this case met an objective standard of reasonableness, and in fact were exemplary. It was at Sippola's insistence that he went to trial. He was fully apprised of the risks in doing so.

To make out a case of ineffective assistance of counsel, Sippola must also

satisfy the second part of the *Strickland* test. He is required to show that he was prejudiced by his attorney's constitutionally deficient performance. Assuming, but of course not conceding that Sippola has successfully negotiated the first part of the *Strickland* test, it is clear that Sippola has made no showing of prejudice. The plea agreement forwarded to him by the government on March 15, 2010, required that he agree and stipulate to certain facts. At the October 24, 2013 § 2255 hearing before this Court he was not able to agree with all of these facts. Without that agreement, the Court would not have accepted his plea. In addition, the March 15 proposed plea agreement was contingent on a plea by his co-defendant, Allison Coss. Both Sippola and his co-defendant Coss were required to accept it, or neither could accept. This contingency was never to come about because he told Coss (whom he lived with and whom he employed) not to accept the plea agreement.

Sippola has met neither the first nor the second parts of the *Strickland* test. His 28 U.S.C. § 2255 petition must therefore be DISMISSED.

ALLISON COSS

Coss's attorney was Frank A. Stupak, Jr. who has successfully practiced law for 44 years. The government sent him the same March 15, 2010, plea agreement that was sent to Sippola's attorney, Henderson, calling for a plea to a two year maximum felony sentence. Stupak met with Coss on March 24th and reviewed it with her. He had previously provided Coss with the March 15th government cover letter which set out the sentencing guidelines. (Coss denies this. The Court chooses to believe Stupak.) At some point, these guidelines were discussed with Coss, and she knew that

7

at the top end they were 46 to 57 months. Although Coss now says that she did not know what her guidelines were - even when she was sentenced - this is simply not believable. She acknowledged to the Court at sentencing that she had read the presentence report. Further, Coss was not a naive bystander. She possesses a university degree in criminal justice. Coss rejected the March 15th proposal at the direction of Sippola, her boyfriend and co-defendant, and not because she did not understand the charges and her exposure. In any event, since Sippola did not accept the plea agreement, it was not available to Coss.

Stupak met with Coss, by Coss's own admission, three or four times and they talked a "handful" of times on the phone. Stupak did explain to her the nature of the offense, and talked about the elements of the offense. Mr. Stupak could have done a better job of documenting all of his contacts with Coss[1]. However, failing to do this is not ineffective assistance of counsel. This Court is convinced that Coss was properly advised.

As the trial date approached, Coss was offered yet another bite at the apple. On June 23, 2010, the government essentially offered to let Coss plead to a misdemeanor contingent on her providing a full, complete and truthful proffer to the government. On June 28th she did enter into a proffer agreement with the government. Stupak advised Coss to tell the truth, and was present while Coss made three attempts to proffer. After the second session, Stupak told her that if she didn't trust his advice, she should talk it

---

[1]Thorough record keeping on advice given by defense counsel would be advised in view of the U.S. Supreme Court's decision in *Lafler* v *Cooper*. 132 S.Ct. 1376 (2012) which was decided after the events giving rise to the present dispute.

over with someone she trusted. She apparently talked to her mother who told her to follow her lawyer's advice. Apparently she listened to neither her lawyer nor her mother. A third proffer attempt failed to satisfy the government's assessment of the truth.

While the Court certainly understands the tough predicament in which Coss found herself, her main problem here was her relationship with Sippola. They lived together; hatched the extortion plot together; and evidently decided to go down together. Stupak was told by Coss that she and Sippola did not want to conflict. She couldn't bring herself to tell the truth, which she knew could likely result in her testifying against Sippola. She took the hit. She prevented herself from receiving the misdemeanor plea offer despite Stupak's best efforts.

There is an undercurrent implication in some of the testimony that Coss did not receive independent legal advice, since we have now learned that Sippola (or his parents) paid Stupak's legal fees. However, there is no credible evidence that Stupak did not render independent services to Coss. Sarah Henderson recognized that Coss needed separate counsel; and Stupak did not know he was being paid by Sippola, having received a check from Coss. Finally, it is evident that Stupak was trying to get the best deal for Coss, even though that deal would have been adverse to Sippola's interests.

Coss has not carried her burden to show that Stupak's performance was objectively unreasonable, nor has she shown prejudice as a consequence of any defective legal representation. Therefore, she has satisfied neither part of the *Strickland* test. Despite any advice she might have received from Stupak, she was

9

precluded from entering into the March 15th proposed agreement by Sippola's decision not to take that agreement. There could be no agreement unless they both agreed to plea. Coss was never offered the June 2010 misdemeanor plea due to her own fully informed actions. The government could not possibly be directed to renew a plea proposal it never offered. *See Burt* v *Titlow*, 2013 WL 5904117, at *8 (Ginsburg, J., concurring). Her petition must therefore be DISMISSED.

A judgment consistent with this Memorandum will be entered.

SO ORDERED.


Dated: 11/18/2013            /s/ R. Allan Edgar
                                       R. ALLAN EDGAR
                                       UNITED STATES DISTRICT JUDGE